# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8973 | **DATE** | 3/16/2004 |
| **CASE TITLE** | Mary Espinosa vs. General Motors Corp | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the Court hereby grants defendant's motion for summary judgment in its entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | MAR 17 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 27 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| MW | courtroom deputy's initials | 2004 MAR 16 PM 4:16 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARY ESPINOSA,

        Plaintiff,

v.                                No. 02 C 8973

GENERAL MOTORS CORPORATION
MARCUS WARD, and COURTNEY
PARROT,

        Defendants.

DOCKETED
MAR 1 7 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Mary Espinosa ("Espinosa"), a Caucasian woman, was employed by Defendant General Motors Corporation ("GM") as a temporary worker at GM's Electro-Motive Division in LaGrange, Illinois from August 4, 1997 to May 2, 2003. In November of 2001 Espinosa was transferred to Department 2180 and was selected

1

27

to operate a stacker machine. Defendant Marcus Ward ("Marcus"), an African-American man, acted as Espinosa's supervisor from January of 2002 to May of 2002. In early January of 2002 Ward verbally counseled Espinosa for not meeting expected production rates and on January 15, 23, and 28 of 2002 Espinosa received written reprimands for failing to meet the expected production rate. Espinosa filed grievances regarding the written reprimands and, as part of a settlement with the union, the reprimands were stricken from her record and Espinosa was given two additional weeks of training on the stacker machine. On March 15, 2002 Espinosa called the GM toll-free number for reporting employee misconduct and complained that Ward routinely followed her to the bathroom, reprimanded her, and refused to give her overtime. On April 17, 2002 Espinosa took a personal day without giving the required two days notice and she received a written reprimand. On May 14, 2002 Espinosa claimed that she saw rats in her work area. She visited GM's medical department and although the department did not give her clearance to leave the plant, she left without permission and received a written reprimand. As part of a settlement with the union, the reprimand was stricken and she was given three hours pay. On May 13, 2002 Espinosa received a written reprimand for careless workmanship. In June of 2002 the lights in Espinosa's work area were turned off, but were turned back on when Espinosa complained. Espinosa operated the stacker

machine until July of 2002 when she was transferred to another department.

Espinosa claims that she sprained her ankle in April of 2003 and was unable to work. On April 22, 2003 GM sent Espinosa a letter informing her that if she did not report to work within five days that she would lose her seniority in accordance with an agreement between GM and her union. Espinosa furnished a doctor's excuse that excused her absence until May 1, 2003, but when she failed to report to work on May 2, 2003, she was notified that her seniority was broken. Espinosa claims that her May 1, 2003 doctor's appointment was cancelled and that her doctor extended her authorized leave until May 5, 2003. She admits, however, that she did not give GM notice of the extension. GM terminated Espinosa's employment on May 5, 2003. Espinosa brought the instant action alleging that Defendants discriminated against her because of her gender and because of her race, and maintained a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e *et seq.* Espinosa also brings an intentional infliction of emotional distress ("IIED") claim.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as

a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or the denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. 4Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport*

*Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Local Rule 56.1

The courts are not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). In the Northern District of Illinois, parties must comply with Local Rule 56.1. Compliance requires "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1 (a)(3). The statement of material facts is comprised of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Local Rule 56.1(a). The non-movant is correspondingly obligated to submit, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. . . ." Local Rule 56.1 (b)(3)(A). The non-moving party is also required to file a material statement of

additional facts and the moving party is required to respond in a likewise fashion. Local Rule 56.1 (a) & (b)(3)(B). The court will deem any fact admitted in the opponent's statement of facts unless the fact is properly denied by the opposing party. Local Rule 56.1 (a) & (b)(3)(B).

A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Pursuant to Rule 56.1 any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

In the instant case Espinosa submitted a response to Defendants' 56.1 statement of material facts. The majority of Defendants' facts are expressly admitted by Espinosa. However, we note that Espinosa's 56.1 response does not list any response for facts 2 through 5. Also, her 56.1 response contains two separate responses for fact number 89, first denying the fact and in the second response admitting the fact. Espinosa has also responded to 97 facts although Defendants'

statement of facts only contains 95 facts. It is apparent after comparing Espinosa's first denials that her denials do not match up with Defendants' statement of facts. We will not search through Espinosa's response to Defendants' statement of facts to determine if one of her responses properly denies a fact in Defendants' statement of facts. Local Rule 56.1 was created to assist the court by relieving a court from the necessity of sifting through the record in search of genuinely disputed material facts and to prevent a plaintiff from progressing to trial by creating confusion regarding the pertinent facts and the evidence. Local Rule 56.1 requires a plaintiff to come forth with specific evidence to support any of its denials and thus show that any disputes are genuine.

Defendants' pointed out all of the above mentioned inconsistencies in Espinosa's 56.1 response in their "Response to Plaintiff's Response to Defendants' Statement of Material Facts and Plaintiff's Statement of Facts" which was filed several months ago and Espinosa has not sought in the interim to file an amended response to Defendants' 56.1 statement of facts. Therefore, we shall take Espinosa's 56.1 response as it was submitted and shall treat the numbered responses as they are written and shall deem any facts admitted as is appropriate under Local Rule 56.1.

## II. Race and Gender Discrimination Claims

If an employer in a Title VII discrimination case brings a motion for summary judgment, the plaintiff can proceed under the direct or indirect method of proof in order to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct approach, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as her race or national origin." *Id.* Under the indirect approach the plaintiff must establish a *prima facie* case which will allow an inference of discrimination. *Id.* To establish a *prima facie* case of race or gender discrimination a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

In cases dealing with reverse racial discrimination (discrimination against the racial majority) the first prong of the *prima facie* case is changed to require a plaintiff to show that there are "'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something fishy about the facts at hand'"*Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003)(quoting *Mills v. Health Care*

*Serv. Corp.*, 171 F.3d 450, 455 (7th Cir. 1999)).

If a *prima facie* case is established then there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides such a reason, the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

Espinosa does not present evidence sufficient to proceed under the direct method of proof and will therefore need to proceed under the indirect method. She argues that Defendants gave her reprimands, failed to train her, refused to give her overtime, and terminated her employment because of her gender and her race.

### A. Race Discrimination Claim

Espinosa's reverse race discrimination claim fails at the first prong because she has failed to show background circumstances that indicate that Defendants had "reasons or inclination" to discriminate against Caucasian employees. Espinosa has not alleged that any derogatory comments were made about Caucasians by supervisors or co-workers at GM. Also, Espinosa admits pursuant to Local Rule 56.1 that during the period that Ward was supervisor he issued 41 written reprimands

to 17 different employees and only 2 of the 17 employees including Espinosa were Caucasian. ( R SF 47). The record is utterly devoid of evidence that would indicate that GM or the Defendant supervisors had a predilection to discriminate against Caucasian employees.

Espinosa alleges only one action by Defendants that constitutes an adverse employment action. The written reprimands did not constitute adverse employment actions. *See Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001)(stating that "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions."). Furthermore, most of the reprimands against Espinosa were stricken from her record. The failure to train could be sufficient to constitute an adverse employment action, but such a conclusion is not supported by the record. Espinosa admitted that she was given two additional weeks of training after her written reprimands for not meeting the production standard were stricken. ( R SF 29). She also admits that she was given eighteen days of training on the stacker machine before she started and admits that other stacker machine operators were given comparable training. ( R SF 21, 22). *See Durkin v. City of Chicago*, 341 F.3d 606, (7th Cir. 2003)(stating that although a failure to train may in some circumstances constitute an adverse employment action the plaintiff's "contention that she was denied training is not

10

borne out by the record."). The alleged denial of overtime could be sufficient to constitute an adverse employment action, but the allegation is again not supported by the record. Ward admits that she was given less overtime than other stacker operators because most overtime opportunities were given to first-shift employees rather than second shift employees and because Espinosa was not performing her job satisfactorily. ( R SF 61). The termination of Espinosa's employment constituted an adverse employment action.

An employee is similarly situated if the employee "is one who is 'directly comparable to [the plaintiff] in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). The employees mentioned by Espinosa as similarly situated employees worked in different positions and worked under other supervisors or under Ward during a different period. Also, Espinosa fails to show that one of the alleged similarly situated employees were treated differently. She points to no co-worker that failed to show up to work for five days and was not terminated.

Even if Espinosa could establish a *prima facie* case Defendants have provided a legitimate non-discriminatory reason for her discharge. Defendants contend that Espinosa was absent from work for five days without properly notifying Defendants of the reason and therefore she lost her seniority under the agreement between the

11

union and GM. Espinosa has offered no evidence to show pretext. The record is utterly devoid of any indication that the given reason by Defendants was a pretext so that they could discriminate against Espinosa because she is Caucasian.

Espinosa claims that some of the supervisors' conduct was offensive, such as her allegation that during her meeting with a GM manager that he was "arrogant" and "talk[ed] down to [her.]" (SF 78). Another example is that she claims that a supervisor laughed at her during a meeting. (SF 43). While these allegations indicate that Espinosa found certain conduct by her supervisors to be offensive, the allegations in no way indicate that Defendants' intended to discriminate against her because of her race. Title VII does not provide employees with a remedy simply because they find their treatment by their employer to be offensive.

B. Gender Discrimination Claim

Espinosa has failed to show that she was performing her job satisfactorily. She admits pursuant to Local Rule 56.1 that she did not receive overtime because she was not satisfactorily performing her job. ( R SF 61). Pursuant to Local Rule 56.1 she admits that GM sent her notice that if she did not report to work within five days that she would lose her seniority. ( R SF 88). She admits that she did not furnish GM with a doctor's note that excused her absence past May 1, 2003, and

admits that she was absent on May 2, 2003. ( R SF 89, 90, 91). As with her race discrimination claim she fails to point to a similarly situated employee that was treated more favorably than her. In addition, even if she established a *prima facie* case, there is not sufficient evidence for a reasonable trier of fact to conclude that Defendants' given reason for her termination was a pretext in order to discriminate against her because she is a woman. Therefore, we grant the motion for summary judgment on the gender discrimination claim.

### III. Hostile Work Environment Claim

Title VII prohibits an employer from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). Factors considered in determining whether there is a hostile work environment include: 1) the "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive, 4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*,

13

282 F.3d 456, 463 (7th Cir. 2002).

Although Espinosa entitles Count I of her complaint "Sexual Harassment – Hostile Work Environment in Violation of Title VII" she alleges no facts in her complaint or her answer to the instant motion that indicate that she suffered harassment of a sexual nature. Her hostile work environment claim is based on allegations of mistreatment such as the rats incidents and lighting incidents. Therefore, we presume that she merely mislabeled Count I in her complaint. She clearly cannot meet the requirements of a sexual harassment hostile work environment claim. One requirement is that a plaintiff must show that "she was subjected to unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature." *Rhodes v. Illinois Dept. Transp.*, 2004 WL 350996, at *5 (7th Cir. 2004).

In her answer to the instant motion Espinosa argues that she was mistreated and that the working conditions at GM were poor, but she fails to indicate the basis for her Title VII hostile work environment claim. Espinosa apparently beleives that she is entitled to relief under Title VII simply because her working conditions are poor. However, Title VII is a civil rights statute. It does not seek to legislate working conditions in general for employees. For Title VII to become applicable there must be discrimination based on one of the protected characteristics listed in

Title VII. Although there is a lack of clarity in her submissions to this court, a we will give her briefs a generous reading and we will address claims that she suffered the alleged harassment at work both because of her race and her gender.

To establish a hostile work environment claim based upon race a plaintiff must show that: "(1) [s]he was subject to unwelcome harassment; (2) the harassment was based on h[er] race; (3) the harassment unreasonably interfered with h[er] work performance by creating an intimidating, hostile, or offensive working environment that seriously affected h[er] psychological well-being; and (4) there is a basis for employer liability." *Hrobowski v. Worthington Steel Co.*, 2004 WL 291973 (7th Cir. 2004). In this case, even if the alleged mistreatment is true, Espinosa fails to present evidence that would suggest that the mistreatment was because of her race. Also, the alleged mistreatment is not sufficient to constitute a hostile work environment. Espinosa's main complaints are in regards to the rat incidents, the lighting incident, and her supervisor watching her go to the bathroom.

To be a hostile work environment the harassment must be pervasive. Espinosa states in her answer that she was "forced to work with rats running around her feet" and she would have this court envisage her working day after day with rats scurrying around her feet. In truth she only claims to have seen rats on two occasions during the entire time she worked at GM. She admits that GM took steps

15

to address the situation by placing additional traps in her area. ( R SF 75). Espinosa claims that one day the lights were turned off in her work area. However, the light on her machine remained on and when she complained all the lights were turned back on. ( R SF 68, 69). Espinosa also claims that Ward would watch her go to the bathroom. However, she does not indicate that Ward spied on her in the bathroom or made any comments to her when she would go to the bathroom. She merely claims that he watched her and followed her to the bathroom. ( R SF 48). Whether or not we approve of Ward's actions and his manner of supervision is not for us to decide. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999)(stating that the courts are not intended to serve as a "super-personnel department" that reviews each an every business decision of an employer). A supervisor is obligated to monitor subordinates and thus it is not entirely unthinkable for a supervisor to keep track of an employee when she leaves the work area. Such conduct is not sufficiently severe to interfere with Espinosa's work performance. Espinosa also admitted that she does not know if Ward watched other employees when they went to the bathroom. ( R SF 49). Considering all of the alleged mistreatment against Espinosa cumulatively no reasonable trier of fact could find it sufficiently severe, frequent, or pervasive to unreasonably interfere with Espinosa's work performance.

We emphasize that it did not unreasonably interfere with her work performance. Espinosa claims that she started taking medication for her anxiety because of the alleged mistreatment at work, but her anxiety was not reasonable. For example, she claims to have been traumatized because a supervisor laughed at her on one occasion (SAF 43) and complains that when the lights were turned off in her work area she asked a supervisor to turn the lights back on and that, although they were turned back on, the supervisor "put his hands over his ears and then walked away." ( R SF 68). She also alleges that a supervisor was "arrogant" and "talk[ed] down to [her]." ( R SF 78). While a reasonable employee may find such conduct to be offensive, it would not be as traumatizing an experience as Espinosa's claims. In regards to the rats incident Espinosa asserts in her own statement of facts that "Plaintiff was very afraid of rats, and upon seeing the rats around her, she began feeling faint, and went to see a nurse in medical." (SAF 34). Even though there is no indication from the evidence that the rats were in her area for more than an isolated instance and the medical center had not cleared her to leave work, Espinosa left work for the day. Espinosa's sensitivity to rats and her reaction to the presence of a rat or rats for an isolated instance in her work area was not reasonable.

In regards to the hostile work environment claim based on Espinosa's gender the analysis is much the same. Espinosa fails to offer evidence that would indicate

17

that the alleged mistreatment is because of her gender. The alleged mistreatment is not sufficiently severe, frequent, or pervasive to unreasonably interfere with her work. Therefore, we grant the motion for summary judgment on all of the hostile work environment claims.

### IV Intentional Infliction of Emotional Distress Claim

Espinosa also brings an IIED claim. To establish an IIED claim under Illinois law a plaintiff must show that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress." *Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir. 2003)(quoting *Doe v. Calumet City* 641 N.E.2d 498, 506 (Ill. 1994)). In this case Espinosa has not provided sufficient evidence for a reasonable trier of fact to conclude that Defendants' conduct was extreme and outrageous or that Defendants intended their conduct to cause her severe distress or knew that their conduct would do so. Therefore, we grant summary judgment on the IIED claim. In addition, even if the Espinosa had sufficient evidence to support her IIED claim, we would dismiss the claim because it would be the only remaining claim before us, and since it is a

state tort claim and there is no showing of diversity jurisdiction the claim is not properly before this court. *See Blau Plumbing, Inc. v. S.O.S. Fix-it, Inc.*, 781 F.2d 604, 612 (7th Cir. 1986)(indicating that "[s]tate law claims should not be retained for adjudication in federal court when the sole remaining basis for federal jurisdiction is the judge-made doctrine of pendent jurisdiction, unless there are pressing reasons for retention. . . . . ").

## CONCLUSION

Based on the foregoing analysis we grant Defendants' motion for summary judgment in its entirety.

								_____
								Samuel Der-Yeghiayan
								United States District Court Judge

Dated: March 16, 2004